**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

UNITED STATES OF AMERICA,

v.

GARRETT MICHAEL AMBRESTER,

Defendant.

Case No. 2:26-cr-69

**OPINION & ORDER**

Before the Court is Defendant Garrett Michael Ambrester's motion to dismiss the indictment and motion for a bill of particulars. ECF Nos. 36, 37. Because the defendant prematurely asks the Court to answer now, pretrial, questions that should be left for the jury, the defendant's motion to dismiss will be denied. However, the Court has considered the arguments in the parties' briefing on the motion for a bill of particulars and concludes that a hearing on that motion is necessary.

## I. BACKGROUND[1]

On February 3, 2026, the defendant posted a series of statements in the comment sections of three YouTube videos. First, the defendant posted two comments on a video titled "NASA's Artemis II moon launch delayed after technical issues during rehearsal":

> "Nobody in space bitch my ar-15 will make sure of that"
>
> "Going to kill all of you demons whatch ,nobody going to space"

[1] All the purported threats are cited verbatim and therefore include all typographical errors.

ECF No. 36 at 4; ECF No. 41-1 at 2.

He then commented three times on a video titled "Back to the moon: Inside NASA's Artemis II mission":

> "Going to be fun killing you frauds faking space programs,going to make America great again for real,I won't stand for this shit anymore going to be some blood shed now, going to feel good gunning down NASA employees"
>
> "Ar+15s gonna handle these frauds^we got addresses now"
>
> "I'll send you terrorist to the grave for faking these fake space programs I'm fed up now"

ECF No. 36 at 4; ECF No. 41-1 at 3.

Finally, the defendant posted three times on a video titled "NASA Artemis II Mission Delayed After Hydrogen Leaks During Test"

> "Going to be a lot of dead fake astronauts"
>
> "Gonna be a war vs nasa"
>
> "NASA?nothing a ar-15 can't handle,you won't fake anymore moon landings,going to be a war vs tou"

ECF No. 36 at 4; ECF No. 41-1 at 4.

A few months later, the defendant posted more comments on four YouTube videos. On the first video, titled "LIVE: Donald Trump presents Kennedy Center Honors medals in Oval Office ceremony," the defendant commented:

> "There is going to be a lot of dead tyrannical government agents on July 4th 2026 just so you tyrants hear me loud and clear"

ECF No. 36 at 5; ECF No. 41-1 at 9.

The next video was titled "Trump Threatens Late Night TV Again, Might Be Upset We Won a Peabody & His Suspicious Health Report." There, the defendant commented:

> "There's going to be a lot of dead tyrannical government agents on July 4th 2026 that's a promise"

ECF No. 36 at 5; ECF No. 41-1 at 10.

The defendant also commented on a video titled "LIVE: Trump meets with Cabinet as talks to end Iran war remain in flux":

> "I'm going to start shooting tyrannical government agents July 4th 2026 so y'all know that's a promise"

ECF No. 36 at 5; ECF No. 41-1 at 11.

Finally, the defendant posted three comments beneath a video titled "JUST IN: Dean Reads Notes of Redacted Epstein File about Trump's Relationship With Epstein":

> "Gonna be a lot of ar-15s going off right after they get pressed against tyrannical government agents heads"
>
> "Gonna be a lot of dead tyrannical government agents in a box soon July 4th 2026"
>
> "My ar-15 kills tyrannical government agents"

ECF No. 36 at 5; ECF No. 41-1 at 13.

The defendant was charged with two counts of "threaten[ing] to assault and murder a United States official, a Federal law enforcement officer, and an official whose killing would be a crime under 18 U.S.C. § 1114, with intent to impede, intimidate, and interfere with such official while engaged in the performance of official duties and with intent to retaliate against such official on account of

performance of official duties" in violation of 18 U.S.C. § 115(a)(1)(B). ECF No. 28 at 1–2. And he was charged with two counts of "transmit[ting] in interstate and foreign commerce communications containing a threat to injure the person of another" in violation of 18 U.S.C. § 875(c). *Id.* at 3–4. The defendant now moves to dismiss the indictment, first, arguing that First Amendment protects his speech because it was not a "true threat;" and second, because the government failed to allege that the purported threats targeted a federal official. ECF No. 36. Alternatively, the defendant seeks a bill of particulars as to the specific statements underlying each of the charged offenses and the specific officials and duties that were subject to each of those threats. ECF No. 37.

## II. LEGAL STANDARD

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "A district court may dismiss an indictment under Rule 12 where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012) (citation and quotation marks omitted); *see also United States v. Regaldo*, 497 F. Supp. 3d 56, 58 (E.D.N.C. 2020) ("A court cannot grant the motion to dismiss under Rule 12 if a defendant's legal contentions are inextricably bound up with the facts of the case.") (citation omitted, alteration rejected).

## III. ANALYSIS

### A. Motion to Dismiss

#### *i. True Threats*

The defendant asks the Court to decide, pretrial, whether the statements underlying the indictment constitute true threats that fall outside the ambit of the First Amendment. The Court will not reach that question because the responsibility for answering it rests with the jury.

"Criticism of government is at the very center of the constitutionally protected area of free discussion." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966); U.S. CONST. amend. I. But the First Amendment "does not prohibit the criminalization of a 'true threat' to injure a person." *United States v. White*, 670 F.3d 498, 507 (4th Cir. 2012) (quoting *United States v. Watts*, 394 U.S. 705, 707 (1969)). Thus, both statutes underlying the charges in the indictment—§§ 115(a)(1)(B) and 875(c)—require the government to prove that the communication at issue is a "true threat that is not protected by the First Amendment." *United States v. White*, 810 F.3d 212, 219 (4th Cir. 2016) (quotation marks omitted) (threatening interstate communications); *United States v. Armel*, 585 F.3d 182, 184 (4th Cir. 2009) (threatening federal officials).

A statement is a "true threat" if "an ordinary reasonable recipient who is familiar with the context . . . would interpret it as a threat of injury." *United States v. Roberts*, 915 F.2d 889, 891 (4th Cir. 1990) (quoting *United States v. Maisonet*, 484 F.2d 1356, 1358 (4th Cir. 1973)) (quotation marks omitted). Generally, "what is and is not a true threat is a jury question." *Id.* (citation omitted); *United States v.*

*McTeer*, 103 F.3d 121, 1996 WL 673773, at *2 (4th Cir. 1996) (unpublished); *United States v. McDonald*, No. 1:10-cr-29, 2010 WL 3835107, at *2 (E.D. Va. Sept. 27, 2010).

The defendant relies on *United States v. Bly*, 510 F.3d 453 (4th Cir. 2007), to argue that the Court should decide the question at this stage. In *Bly*, the Fourth Circuit held that "[w]hether a written communication contains either constitutionally protected political hyperbole or an unprotected true threat is a question of law and fact." *Id.* at 457 (citation and quotation marks omitted). The defendant insists, however, that whether a statement constitutes a true threat is a question of law to be determined "objective[ly]" under §§ 115(a)(1)(B) and 875(c). ECF No. 36 at 8.

But where the defendant misses the mark is the posture in which *Bly* was decided. The defendant in *Bly* appealed a district court's denial of his motion to dismiss the indictment after the defendant pleaded guilty. The parties stipulated to a certain set of facts on which the indictment and plea were based. It was, then, for the district court to determine whether, as a matter of law and fact, "the conduct to which the [appellant] admit[ted] [was] in fact an offense under the statutory provision under which he [] plead[ed] guilty." *United States v. Miller*, 75 F.4th 215, 225 (4th Cir. 2023) (citation and quotation marks omitted). It follows that the Court would then review whether the agreed-upon facts—the statements that would have been offered by the government at trial—could constitute an offense under § 876(b).

Here, the defendant asks the Court to rule on this motion without all the facts. The defendant argues that the entire universe of statements is before the Court and thus there is no legally significant difference between deciding whether these

statements are true threats now, versus deciding at the Rule 29 stage. ECF No. 46 at 4.

Rule 12 does not permit the Court to dismiss an indictment by "determin[ing] [] facts that should have been developed at trial." *Engle*, 676 F.3d at 415. And the relevant statements underlying the charges are not the entire universe of evidence that might be presented. The "context of the [statement]" is essential in determining whether a reasonable recipient would interpret the statement to be a true threat. *United States v. Brooks*, No. 94-5199, 1995 WL 5897, at *3 (4th Cir. 1995) (citation omitted) (unpublished). And the litany of contextual evidence provided in the defendant's motion to dismiss alone is enough for the Court to conclude that more is needed before the central question can be answered. *See* ECF No. 36 at 11–20.

Ultimately, the defendant's request asks the Court to determine the sufficiency of the evidence where it does not have authority to do so. *United States v. Wills*, 346 F.3d 476, 488 (4th Cir. 2003).[2] Generally, "what is or is not a true threat is a jury question," *Roberts*, 915 F.2d at 891, and where disputes over the facts persist, the Court will not step in to take that question from the jury. *See United States v. Weaver*, 659 F.3d 353, 355 at n. *(4th Cir. 2011) ("[D]istrict court[s] may consider a pretrial motion to dismiss an indictment where the government does not dispute the ability

---

[2] The Court struggles to square the defendant's motion to dismiss, in which he argues that the facts underlying the allegations are clear enough for the Court to determine whether the alleged statements constituted true threats as a matter of law, with his efforts to simultaneously seek a bill of particulars as to what specific evidence will be relied on at trial.

of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts.").

Because it is evident that all facts that would be pertinent at trial are not before the Court, let alone fully developed, the Court declines to decide whether the statements underlying the relevant charges are true threats as a matter of law and leaves that question for the jury.

***ii. Intent Requirement***

Alternatively, the defendant argues Counts I and II should be dismissed because the government failed to allege that the defendant targeted any specific federal official. The defendant argues that, to fall within § 115(a)(1)(B), a threat must "be directed to its target" such that the defendant "acted with the purpose of having his words reach the targeted public official." ECF No. 36 at 21–22.

The Fourth Circuit has articulated the elements the government must prove to sustain a conviction under § 115(a)(1)(B). *United States v. Newsom*, 9 F.3d 337, 339 (4th Cir. 1993) ("(1) a threat, (2) to murder, (3) a federal law enforcement officer, (4) with intent to retaliate against the officer, (5) on account of the performance of official duties."). If one threatens a federal official, they must do so with intent to impede, intimidate, or interfere with that official while carrying out their duties or with the intent to retaliate against an official on account of that official's duties. *Id.*

But the defendant asks the Court to enhance that intent element by requiring that an individual must have made a threat with the intent that the threat reach a targeted public official so that the threat might impede, intimidate, or interfere with that official's duties. To support that proposition, the defendant cites an out-of-circuit

district court case where the court concluded that an individual's statement to an insurance adjuster that they were "going to shoot Congressman Murtha's head off" did not constitute a true threat because "there was simply no connection between [the individual], [the insurance adjuster], and Murtha, its intended object." *United States v. Fenton*, 30 F. Supp. 2d 520, 522, 526 (W.D. Pa. 1998). This case, at best, has little persuasive authority and does not require the Court to read an enhanced intent requirement into the statute.

The Fourth Circuit has not opined on this exact question, but *United States v. Spring*, 305 F.3d 276 (4th Cir. 2002), addressed a similar issue related to the Sentencing Guidelines. In *Spring*, the Fourth Circuit concluded that threats in a letter given to one individual but made toward multiple parties could aggregate as threats against the party receiving the letter. *Id.* at 280–81. The court specifically withheld any discussion of whether those statements counted as threats under § 115(a)(1), but its reasoning is otherwise helpful here. *Id.* at 281.

The defendant argues that we should not follow the lead of other circuits that have cast the question of whether the defendant intended to direct a threat at an official as part of the true threat analysis. *Spring's* reasoning is in step with that conclusion. Albeit in context of a Guideline enhancement, the court noted that "failure to communicate a threat to its intended victim is [not] entirely irrelevant" because, in some cases, "whether a threat was communicated to the victim may affect whether the threat could reasonably be perceived as an expression of genuine intent to inflict injury," while in others, "communication of the threat to the intended victim may be essential to consummation of the crime." *Spring*, 305 F.3d at 281. But in those cases,

"the communication requirement would arise from the other elements of the offense; it would not inhere in the term threat." *Id.* (quotation marks omitted).

Looking to the text of the statute, the communication requirement could only inhere in the "intent to impede, intimidate or interfere with" or "intent to retaliate" elements. Under § 115(a)(1)(B), the government has the option to charge the defendant under an "intent to impede" or an "intent to retaliate" theory. The language of each of the prongs consequentially differs, and accordingly, the defendant's enhanced intent argument only applies to the intent to impede prong, not the intent to retaliate prong.

For one to threaten to assault, murder, or kill an official with intent to impede, intimidate, or interfere with such official while engaged in the performance of official duties, the threat must be received. The threat serves as a type of interruption to the official's duties that they must carry out by nature of their office. And it is hard to imagine how one might intend to impede, intimidate, or interfere with an official in the performance of their official duties without intending that official receive the threat, even where the threat is never *actually* received.

But a threat to assault, kidnap, or murder an official with intent to retaliate against the official on account of the performance of their official duties, takes out any reaction by or impact on the official. The threat itself is retaliation on account of some action taken by the official in their official capacity. That is why the Sixth Circuit reached a similar conclusion. *United States v. Snelenberger*, 24 F.3d 799, 803 (6th Cir. 1994) (holding that the intent to retaliate prong "merely states that the threat be made with the intent to retaliate against the [official] after the [official] had

acted . . . [thus] it was not required that the [defendant] intend that the threat should be communicated to the [official]").

Therefore, to prove intent to impede, intimidate, or interfere, the government must prove that the defendant acted with the purpose of having his statements reach an official. But the government does not bear that burden if it proceeds on an intent-to-retaliate theory.

The defendant further argues that the Court must dismiss Counts I and II because the superseding indictment fails to allege that any of the charged statements were "sent to, addressed to, or intended to reach any such official" and that "the facts foreclose any such allegation." ECF No. 36 at 24. But this case is not like *Fenton*, where the defendant spoke to an insurance adjuster—the defendant here "spoke to a comment thread." *Id.*

According to the defendant, commenting on public YouTube threads where certain federal officials are mentioned is "the digital equivalent of shouting from a soapbox in a crowded square." ECF No. 36 at 10. The question, though, is not whether the defendant *feasibly* directed his statements to an official, but rather, whether the defendant intended the threat to be received by the official. Even though the defendant's comments were on videos published by private entities, anyone could read them, including the federal officials the government contends were targeted. The statements made on public YouTube threads as proffered are enough to satisfy the government's burden to allege "the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).

It is not for the Court to decide at this stage whether there is sufficient evidence that the defendant had the requisite intent to impede or intent to retaliate, because "[a] defendant's intent is a quintessentially factual question." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 282 (4th Cir. 2002) (citation and quotation marks omitted); *McCormick v. United States*, 500 U.S. 257, 270 (1991) ("[M]atters of intent are for the jury to consider."). That question, too, will be left for the jury. Accordingly, the motion to dismiss the indictment will be denied.

**B. Bill of Particulars**

The defendant alternatively seeks a bill of particulars identifying: (1) the specific statement underlying each count and (2) for Counts I and II, the official that the defendant's statement allegedly threatened and the duties the government contends the defendant intended to impede, intimidate, interfere with, or to retaliate against. ECF No. 37 at 9.

The defendant argues that the superseding indictment only tracks the statutory language and does not point to what statements constitute the threats underlying the charges. ECF No. 37 at 5. In its opposition to the defendant's motion, the government has, on its own volition, proffered particulars in response to the defendant's first request—the specific statements underlying each of the four counts. ECF No. 42 at 4–5; *see* ECF No. 41-1 at 2–4, 9–11, 13.

It is within a district court's discretion whether to grant a request for a bill of particulars. *United States v. Jackson*, 757 F.2d 1486, 1491 (4th Cir. 1985). The Court "may direct the government to file a bill of particulars," Fed. R. Crim. P. 7(f), so the defendant may "obtain sufficient information on the nature of the charge against him

so that he may prepare for trial [and] minimize the danger of surprise at trial." *United States v. Schembari*, 484 F.2d 931, 935 (4th Cir. 1973).

While the Court does not, at this moment, find the defendant's arguments regarding the need for the government to identify the specific targeted public official persuasive, it nevertheless thinks it prudent to hold a hearing on this motion to address, among other things, the potential due process implications of not requiring the government to identify which specific statements, independently or conjunctively, underly each of the charged offenses. The parties should be prepared to address that issue and to discuss the other requests the defendant made in his motion.

## IV. CONCLUSION

For the reasons stated herein, defendant Garrett Michael Ambrester's motion to dismiss (ECF No. 36) is **DENIED**.

The parties are **DIRECTED** to contact the Court within five days to schedule a hearing on the motion for a bill of particulars (ECF No. 37) and to schedule a trial date to begin as early as practicable.

**IT IS SO ORDERED.**

/s/ JKW

Norfolk, Virginia
November 2, 2026

Jamar K. Walker
United States District Judge